UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE ORIGINAL BAREFOOT | ) | Case No. 08-13417-SSM |
| FLOORS OF AMERICA, INC. | ) | Chapter 7 |
| | ) | |
| Debtor | ) | |

**MEMORANDUM OPINION**

Several weeks after The Original Barefoot Floors of America, Inc., filed a chapter 7

bankruptcy petition in this court, David Kennelly, whose company, DAK Enterprises, was the

debtor's commercial trash hauler and was owed approximately $1,200, dumped a roll-off

container of trash on the driveway and yard of the debtor's vice-president, Diana Beltran. An

order to show cause why DAK and Mr. Kennelly should not be held in civil contempt for

violation of the automatic stay was subsequently granted on the debtor's motion, and an

evidentiary hearing was held on September 22, 2008. Mr. Kennelly was present in person and

was represented by counsel. For the reasons stated, the court is unable to find that Mr.

Kennelly's actions, however censurable in other respects, constituted an act to collect a

prepetition debt in violation of the automatic stay. Accordingly, the order to show cause will be

dismissed.

Background

The Original Barefoot Floors of America, Inc., filed a petition in this court on June 13,

2008, for relief under chapter 7 of the Bankruptcy Code. Diana Beltran, its vice-president and

40% shareholder, was designated by the court to perform the duties of the debtor. Among the

creditors listed on the company's schedules was DAK Enterprises, whose address was shown as

30791 Portobago Trail, Port Royal, Virginia 22535.[1]  A notice of commencement of the

bankruptcy case was mailed to DAK at that address by the Bankruptcy Noticing Center on June

18, 2008.  DAK had supplied commercial trash removal services to the debtor for approximately

two years and was owed approximately $1,200.00 on the date of the bankruptcy filing.  DAK

provided the debtor with a "roll-off" container at its business location, which was located at the

White Oak shopping center in Spotsylvania, Virginia, and would haul the trash-filled container

away approximately once per month to a local landfill (where he had to pay a fee to dump the

contents of the container).

On a date that was probably June 30, 2008[2]—but in any event was after the date of the

bankruptcy filing—Mr. Kennelly transported the container from the shopping center to Ms.

Beltran's home and dumped the contents (which he testified consisted largely of old carpet,

padding, tubes, and flooring laminate) onto her driveway and yard at about 6:30 a.m.  Mr.

Kennelly testified that he had been telephoned over the weekend by the shopping center

---

[1]  In his written response to the show cause order, Mr. Kennelly argued that his address had not
been properly listed on the debtor's schedules.  This is simply not true, and the certificate of
service by the Bankruptcy Noticing Center shows that the notice of commencement of the case
was mailed to the correct address.  It is true, however, that Mr. Kennelly's address was
incorrectly shown on the order to show cause—which he nevertheless ultimately received—and
he apparently assumed it was incorrect on the schedules as well.

[2]  Ms. Beltran testified to the June 30th date in response to leading questions from her attorney.
Deputy Sheriff Gregory Carter, who responded to Ms. Beltran's complaint, testified that the
incident occurred on August 2, 2008 (which would have been *after* the debtor filed the contempt
motion, and thus could not possibly be correct).  Following the hearing, Deputy Carter informed
the author's law clerk that he had misread his notes and that the correct date was July 2, 2008.
Since everyone agrees the incident occurred, and that it took place after the notice of
commencement of case was mailed, the exact date is irrelevant.

landlord, who told him he wanted the container removed because he was trying to re-rent the

unit.  The landlord also told him where Ms. Beltran lived.  Mr. Kennelly testified that he had not

received any bankruptcy notices and simply assumed the business had been moved to Ms.

Beltran's property.[3]  In any event, the resulting pile of trash was approximately five or six feet

high and approximately 20 feet long.  Ms.Beltran, who recognized Mr. Kennelly's truck, was

understandably upset—she testified that she was afraid someone would set the trash on fire and

burn her house down—and called the county sheriff's office, which sent a deputy sheriff out to

investigate.  The deputy telephoned Mr. Kennelly, who agreed to return and pick the trash up.

While Mr. Kennelly was doing so, the deputy obtained arrest warrants charging him with

trespassing and illegal dumping, and Mr. Kennelly ultimately pleaded guilty to those offenses.

Ms. Beltran testified that the incident left her extremely shaken and fearful of what might happen

next.

Discussion

A.

The filing of a bankruptcy petition creates a broad statutory stay of most kinds of creditor

activity, including "any act to collect, assess, or recover a claim against the debtor that arose

before the commencement of the case." § 362(a)(6), Bankruptcy Code.  It is universally

recognized that the automatic stay is among the most fundamental protections provided by the

Bankruptcy Code.  *See Grady v. A. H. Robins Co., Inc.*, 839 F.2d 198, 200 (4th Cir. 1988) ("The

automatic stay . . . gives the debtor a breathing spell from his creditors. It stops all collection

---

[3]  Mr. Kennelly testified that on a number of occasions mail had apparently been taken from his
mailbox, prompting him at one point to make a formal complaint to the postmaster.

3

efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment

or reorganization plan, or simply to be relieved of the financial pressures that drove him into

bankruptcy.") (quoting legislative history).  A willful violation of the automatic stay may be

addressed by the court under its contempt powers.  *See Burd v. Walters*, 868 F.2d 665 (4th Cir.

1989) (holding that bankruptcy court has civil contempt powers to carry out the provisions of the

Bankruptcy Code).  Additionally, an individual injured by a willful violation of the automatic

stay has a statutory right to recover actual damages, including costs and attorneys' fees and, in

appropriate circumstances, punitive damages.  § 362(k), Bankruptcy Code; *Budget Service Co. v.

Better Homes of Va.*, 804 F.2d 289 (4th Cir. 1986) (holding that bankruptcy court had authority

under predecessor of current § 362(k) to impose sanctions for violation of automatic stay, where

creditor knew of the bankruptcy filing and intentionally attempted to repossess the debtor's

vehicles).

B.

That said, the difficulty in this case is that even if the court finds that Mr. Kennelly knew

of the bankruptcy filing, and that the trash was dumped on Ms. Beltran's property in retaliation

for DAK having been stiffed, the question remains whether purely retaliatory conduct,

unaccompanied by an express or implied demand for payment of a prepetition debt, falls within

the literal proscription of the automatic stay. Section 362(a) of the Bankruptcy Code prohibits a

number of very specific activities:

> (1) the commencement or continuation, including the issuance or employment of
> process, of a judicial, administrative, or other action or proceeding against the
> debtor that was or could have been commenced before the commencement of the
> case under this title, or to recover a debt against the debtor that arose before the
> commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

Of these, the only one that could arguably apply to the facts of this case is Section 362(a)(6), which, as noted, prohibits "any act *to collect, assess, or recover a claim* against the debtor that arose before the commencement of the case" (emphasis added).  Under the plain language of the statute, if an act is not designed or intended to collect a debt, it does not fall within the reach of the automatic stay, even though it may be wrongful in other ways.  Put another way, simply because an act may be tortious or even criminal, if its purpose is not to collect a debt, it is not a violation of the automatic stay.  This does not, however, quite answer the question of whether an injurious act that is undertaken specifically in *response* to a bankruptcy filing—but not accompanied by an express demand for payment— may be nevertheless treated as an act to collect a prepetition debt and thus a violation of the automatic stay.

C.

Given that the situation must arise with some frequency, there is a surprising dearth of

authority on the question of whether a purely retaliatory action in which a creditor engages in

outrageous behavior against a debtor because of a bankruptcy filing—but without specifically

demanding payment of the creditor's debt—violates the automatic stay.  There appear to be only

three published decisions, one of which determined such conduct not to be a violation of the

automatic stay, and two of which determined that it was.

The first case, *In re DeLay*, was an appeal of the Bankruptcy Court's decision holding the

creditor in contempt for two separate violations of the automatic stay under 11 U.S.C. 362(a) and

one violation of the discharge injunction under 11 U.S.C. § 524(a).  *In re DeLay*, 48 B.R. 282

(W.D. Mo. 1984).  In particular, the Bankruptcy Court held that the president of a company with

which the debtor had a longstanding business relationship violated the automatic stay when he

approached the debtor immediately before the meeting of creditors and belligerently demanded

payment of his claim.  The Bankruptcy Court also found that the creditor violated the automatic

stay when he instituted criminal proceedings against the debtor, accusing the debtor of criminal

conversion related to the debtor's retention of funds from sales of goods the creditor supplied

him  The creditor was order to pay $250 for each violation of the stay or discharge injunction

(totaling $750) and was fined $1,000 in "compensatory damages" and another $1,306 for

attorney's fees and costs.  *In re DeLay*, 48 B.R. at 283.  The District Court affirmed in part and

reversed in part.  Importantly, the District Court reversed the Bankruptcy Court's finding that the

creditor's initiation of criminal proceedings against the debtor was a violation of the automatic

stay and the discharge injunction.  *In re DeLay*, 48 B.R. at 285.  While its decision largely rested

on 11 U.S.C. § 362(b)(1), which exempts "the commencement…of a criminal action or

proceeding against the debtor" from the automatic stay, the District Court acknowledged that the

initiation of a criminal proceeding against the debtor may be a violation of the stay "if it is part

of an 'aggressive campaign' to collect a debt." *Id*. (*citing In re Ohio Waste Services, Inc.*, 23

B.R. 59, 60 (Bankr. S.D. Ohio 1982)).  However, the District Court determined that the evidence

did not show that the creditor initiated the criminal proceedings against the debtor in order to

collect on the debt owed to him but rather as "retaliation against the debtor's efforts to seek the

protection of the bankruptcy laws." *Id.*  In fact, the District Court stated that "the evidence

strongly suggests that Appellant was seeking to 'get even' only in an emotional sense, not in a

monetary sense," and thus concluded that such action was not "an act to collect a pre-petition

claim within the meaning of § 362(a)." *Id.* at 285-86.  Accordingly, the District Court set aside

the finding of contempt and the fine assessed against the creditor regarding the initiation of

criminal proceedings against the debtor. *Id.* at 286.

The second case, *In re Wagner*, involved a creditor visiting the debtor at his residence.

*In re Wagner*, 74 B.R. 898 (Bankr. E.D. Pa. 1987).  During the first visit, the creditor discussed

the status of two trucks (purchased with the creditor's funds) with respect to which there were

conflicting claims of ownership.  74 B.R. at 900.  During that conversation, the creditor

threatened to have the trucks towed from the debtor's property.  *Id.*  On the second occasion,

about three weeks after the first, the creditor barged into the debtor's house at night, "shut the

lights, and, in the darkness held up a finger to the debtor's head (as if he were holding a gun) and

screamed, 'I'm not playing, I'm not playing, next time I'm going to blow your brains out, bring a

gun and I'll blow your brains out.'" *Id.* at 900-901.  For that incident, the creditor was charged

with and pled guilty to criminal harassment. *Id.* at 901. The Bankruptcy Court found that both

incidents violated the automatic stay under 11 U.S.C. § 362(a), stating that the most relevant

subsections were (a)(3) and (a)(6). *Id.* According to the Bankruptcy Court, "[s]imply put, on

September 16 and October 5, 1986, [the creditor] went to the debtor's residence and demanded

return of property of the estate." *Id.* The Bankruptcy Court further found that the creditor

willfully violated the automatic stay on the two occasions, found him in contempt, and awarded

actual and punitive damages and attorneys' fees and costs. *Id.* at 905.

The third case, *In re Smith*, involved a creditor who sent a condemnatory letter to the

debtor's employer. *In re Smith*, 185 B.R. 871 (Bankr. M.D. Fla. 1994). The letter was sent more

than two months after the debtor filed his Chapter 7 petition. *Id.* at 872. In the letter, the

creditor, who claimed to be a stockholder of the company, detailed his complaint against the

debtor, indicated how much the debtor owed him, provided the employer with the debtor's

bankruptcy case number, and suggested that the debtor's employment be reconsidered *Id.* The

letter was addressed to the Chairman and CEO of the company and the debtor's supervisor. *Id.*

Because of the letter, the debtor was forced to explain why he filed for bankruptcy, and the

debtor was worried that the letter would prevent him from obtaining promotions within the

company that would have been available had it not been for the letter. *Id.* The Bankruptcy

Court found that the letter "was willfully written…for the purpose of harassing and retaliating

against the Debtor by attempting to seriously and effectively interfere with the Debtor's

employment." *Id.* Citing the legislative history of 11 U.S.C. §§ 362(a)(1) and (a)(6), the

Bankruptcy Court stated that Congress' intent regarding the automatic stay was "to protect

debtors from all forms of harassment." *Id.* at 873. According to the Bankruptcy Court, the

actions taken by the creditor in the case were included in the various actions prohibited by the

automatic stay.  Thus, because the creditor's letter was a willful attempt at retaliation and

harassment of the debtor, "controvert[ing] the Congressional intent of Section 362," the creditor

willfully violated the automatic stay and was ordered to pay damages and costs and fees.  *Id.*

D.

Despite its rather broad language to the effect that an attempt merely to "get even" with a

debtor does not, in and of itself, constitute an act to collect a debt, the court does not find *Delay*

to be wholly dispositive, since the specific exclusion of criminal prosecutions from the automatic

stay probably makes the creditor's motives immaterial.  (And, of course, the law already

provides a remedy for making a false or unjustified accusation of criminal conduct).  In *Wagner*,

the creditor's actions went beyond a mere expression of anger or annoyance, since not only did

the creditor threaten during the first visit to have the disputed trucks towed from the debtor's

property, but his threat during the second visit to "blow [the debtor's] brains out" could

reasonably be understood (particularly in light of the prior visit) as suggesting the action that

would be taken if the debtor did not return the trucks.  The letter to the debtor's employer in

*Smith* perhaps comes closer to a purely retaliatory act and may be a closer analogy to the

dumping of the trash on Ms. Beltran's property than the creditor actions in either *DeLay* or

*Wagner*.   However, notwithstanding the confident assurance in *Smith* that Congress intended

Section 362(a) to protect debtors from "all" forms of harassment, whether or not specifically

enumerated in the statute, this court is not willing to stretch the text of the statute beyond its

plain meaning simply based on language in the legislative history that is broader than the statute

itself (which nowhere uses the word "harassment.")  Put another way, lofty goals are one thing,

9

but no one should be held in contempt for violation of an injunction (whether statutory or

otherwise) unless the conduct falls reasonably within its terms.

At the same time, the mere absence of an express demand for payment does not

automatically take an injurious act outside the scope of the automatic stay.  Any action which

would reasonably put a debtor in fear (whether of bodily harm, fiscal ruin, or public obloquy) for

having filed bankruptcy will in many cases place pressure on the debtor to pay the debt simply to

make the vindictive creditor go away.  Put another way, an attempt to collect a debt can be

implied from the circumstances even if the creditor does not say, in so many words, "I'll go

away if you pay my debt."

The difficulty the court has with the present case, however, is that the act of dumping the

debtor's trash on Ms. Beltran's lawn, while it may in fact have frightened her, does not appear to

have done with that purpose in mind, or, for that matter, for any purpose other than making the

trash her responsibility rather than Mr. Kennelly's.  That the dumping was criminal, and could

likely also be pursued in a civil action for trespass, does not mean that it was an attempt to

collect a debt.  There was no specific demand for payment of the $1,200 owed to DAK, nor was

there a specific threat of harm equivalent to the creditor's theat in *Wagner* to blow the debtor's

brains out.  And because Mr. Kennelly simply dumped the trash and drove away, and because

there was neither any prior nor subsequent communications between him and Ms. Beltran with

respect to the money owned DAK, his actions do not appear calculated to pressure Ms. Beltran,

let alone the debtor, into paying DAK's bill.  Accordingly, while the court has no difficulty in

finding Mr. Kennelly's behavior highly offensive and improper, the court cannot find that it

constitutes an act to collect a prepetition debt in violation of the automatic stay.

E.

Because the court cannot find that the dumping of the trash on Ms. Beltran's property

was an attempt to collect the debt owed to DAK, the court need not resolve the factual dispute

over whether Mr. Kennelly had actual knowledge of the bankruptcy filing.  The court simply

notes that the records of this court show that the notice was mailed to DAK at its correct address.

A general denial of having received notice of a bankruptcy case is usually not sufficient to

overcome evidence that notice was mailed.  *Bosiger v. US Airways*, 510 F.3d 442, 452 (4th Cir.

2007).  While the court accepts that DAK may have had problems from time to time with mail

being stolen from its mailbox, the court is unable to find that the evidence of such occasional

problems is sufficient to rebut the inference of delivery arising from the "mailbox" rule.

Similarly, because the court cannot find a violation of the automatic stay, the court need

not resolve whether compensatory damages could be awarded for Ms. Beltran's mental anguish.

If the present proceeding is viewed purely as a civil contempt proceeding, it seems clear that

there is no authority to award damages for emotional distress   *Burd v. Walters*, 868 F.2d 665,

670 (4th Cir. 1989) (vacating award of $1,000 in damages to a debtor for emotional distress and

stating "no authority is offered to support the proposition that emotional distress is an

appropriate item of damages for civil contempt, and we know of none").  If viewed instead as a

action for damages under § 362(k),[4] the courts of appeal that have considered the issue, while

agreeing that emotional distress is an available component of 'actual damages' under § 362(k),

are divided on the standard for its award.  *See Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265

---

[4]  The court also notes, but need not resolve, whether an action for damages under § 362(k) must
be brought as an adversary proceeding or whether a claim for such damages may be asserted in
the context of, orancillary to, a contempt proceeding.

(1st Cir. 1999) (rejecting creditor's argument that mental anguish must be proven by "physical

injury or corroborating medical testimony" and upholding emotional distress damages of

$25,000 for violation of the automatic stay based on the debtor's testimony that described

specific changes in his life, including change in eating habits, decrease in social activities, and

problems with sleeping); *Aiello v. Providian Financial Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)

("[W]e do not think that emotional injury is compensable under section 362(h) [now 362(k)]

when there is no financial loss to hitch it to by means of the clean-up doctrine."); *In re Dawson*,

390 F.3d 1139, 1149-50 (9th Cir. 2004) (holding that financial loss is not a prerequisite for

award of emotional distress damages and stating that although "fleeting or trivial anxiety or

distress" is not sufficient, such damages can be awarded based on (1) testimony from non-

experts who testify as to "manifestations of mental anguish and clearly establish that significant

emotional harm occurred"; (2) corroborating medical evidence; or even (3) significant emotional

distress that is "readily apparent even without corroborating evidence," such as where the

creditor "engaged in egregious conduct."); *In re Repine*, 536 F.3d 512 (5th Cir. 2008) (stating

that appellate courts should exercise "caution in affirming emotional damage awards because

emotional damages are easier to manufacture than other types of damages" and vacating award

when debtor did no more than set forth "generalized assertions" of his emotional distress in his

testimony).

A separate order will be entered dismissing the order to show cause.

Date: _____        _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge

Copies to:

Tommy Andrews, Jr., Esquire
Tommy Andrews, Jr., P.C.
122 N. Alfred Street
Alexandria, VA  22314
Counsel for the debtor

Madeline A. Trainor, Esquire
Cyron & Miller, LLP
100 N. Pitt Street, Suite 200
Alexandria, VA  22314
Counsel for DAK Enterprises and David Kennelly

Robert O. Tyler, Esquire
Tyler, Bartl, Gorman & Ramsdell, PLC
700 S. Washington Street, Suite 216
Alexandria, VA  22314
Chapter 7 trustee